**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Lynne Fonseca, | No. CV-24-08245-PCT-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Laura Lynne Fonseca seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits. Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

**I.  Background**

Fonseca filed an application for disability insurance benefits on March 23, 2022, alleging a disability beginning May 2, 2021. (Administrative Record ("AR") 17.) The claim was denied initially and upon reconsideration. (AR 17.) After a hearing, an ALJ denied her claim on July 12, 2024. (AR 36.) The Appeals Council denied Fonseca's request for review (AR 2), and she then appealed to this court.

**II.  Legal Standard**

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a

preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.   Analysis**

Fonseca argues only that the ALJ committed materially-harmful legal error by not sufficiently accounting for the migraine symptoms she alleged in her testimony when determining her RFC.[1] (Doc. 12 at 7.) She seeks a remand for further administrative proceedings. (Doc. 12 at 8.)

**A. The ALJ's Five-Step Disability Evaluation Process**

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically-determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If not, at step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets

---

[1] Fonseca claims "[t]he ALJ improperly rejected [her] testimony regarding her migraines." (Doc. 12 at 4, 8.) But she also says "at no point did the ALJ discount or suggest that [her] testimony regarding her migraines was not credible." (Doc. 12 at 7.)

- 2 -

her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Fonseca had "not engaged in substantial gainful activity" since her disability onset date and that she had multiple severe impairments (including migraines) for a continuous period of twelve months, satisfying her burden at steps one and two (AR 20–21). *Id.* § 404.1520(a)(4)(i)–(ii). At step three, the ALJ determined Fonseca's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment (AR 22), and at step four that Fonseca had the RFC to perform light work with some additional limitations (AR 25). In evaluating Fonseca's RFC, the ALJ partially discounted her symptom testimony. The ALJ found inconsistent Fonseca's "statements about the intensity, persistence, and limiting effects of . . . her symptoms[ ] . . . because the evidence demonstrates a fairly conservative treatment history and generally benign objective medical findings." (AR 27; *see also* AR 27 (finding Fonseca's statements "not entirely consistent with the medical evidence and other evidence in the record").)

The ALJ used Fonseca's RFC to conclude at step four that she was unable to perform any of her past relevant work. (AR 33.) But the ALJ determined at step five that "there were jobs that existed in significant numbers in the national economy that [Fonseca] could have performed," so she was not disabled. (AR 34.)

**B. The ALJ's Evaluation of Fonseca's Symptom Testimony**

Fonseca argues the ALJ erred by discounting her symptom testimony regarding her migraines. (Doc. 12 at 6.) When a claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective symptom-severity testimony by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v.*

*Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude the ALJ "did not arbitrarily discredit [a] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified), *superseded on other grounds by* 20 C.F.R § 404.1502(a). Because the ALJ did not find that Fonseca was malingering, she could only discredit the symptom testimony by providing "specific, clear and convincing" reasons for doing so. *Revels*, 874 F.3d at 655.

One of the ALJ's "specific, clear, and convincing" reasons for discounting Fonseca's symptom testimony was her response to treatment—specifically, her migraine symptom improvement from Botox injections. The ALJ discussed Fonseca's testimony related to her migraines multiple times. (*See* AR 26 (Fonseca testified "that she ha[d] daily headaches, and migraines once or twice per month"), 31 (at one point Fonseca "complained of migraine headaches 30 days per month, lasting six hours" and described them as "pulsating and throbbing").) But after discussing how the objective medical evidence showed Fonseca's migraine symptoms improved after receiving Botox injections, the ALJ concluded her migraines were only "likely to cause non-disabling limitations." (AR 31.) And the ALJ "accounted for [Fonseca's] migraines" by limiting her to light exertional work and in finding she must avoid concentrated exposure to "loud noise" (which Fonseca had described as a trigger), "vibration, and chemicals, odors, dust, fumes, and gases." (AR 31.) This finding contradicts Fonseca's argument that the ALJ "described her migraines as doing better after Botox" but ignored limitations that stemmed from them. (Doc. 15 at 1.)

The ALJ found Fonseca's migraines were not disabling because Fonseca reported to medical providers multiple times throughout the relevant period that her migraine symptoms significantly improved after receiving Botox injections. (*See* AR 31 (citing AR 1297 (in March 2022, Fonseca reported that she had "significant relief [from her migraines] in the last four months with Botox [injections]"), 2693 (in April 2022, she reported that Botox had improved her migraines by 50%), 2140 (in May 2022, she reported 50% relief in intensity and reduction in the number of migraine episodes), 2155 (same in August 2022)).) The frequency of Fonseca's migraines dropped from 30 days per month in March

2022 (AR 31), as the ALJ noted, to one-to-two per month when she testified (AR 63). And there were at least six other instances in the record in which Fonseca reported significant migraine relief and symptom control via Botox injections. (*See* Doc. 14 at 6–7 (citing records).)

Fonseca argues the improvement in her migraine symptoms must be taken in context given that "she qualified for [Botox] treatment on multiple occasions [which] suggests that even with a 50% improvement [in symptoms], [she] was still having migraines and headaches at significant frequencies." (Doc. 12 at 7.) But for an ALJ to use improvement from treatment to discount symptom testimony, the ALJ need not find treatment cured the claimant's symptoms completely and instead "that the pain was 'controlled,' i.e., no longer debilitating." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (quoting *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006) (9th Cir. 2016)). And as the Commissioner argues, even if a claimant's treatment "does not wholly resolve [their] headaches, an ALJ can evaluate allegations of disabling headaches based on evidence of improvement." (Doc. 14 at 6–7.)

In fact, migraine improvement from Botox injections has been found to be a "specific, clear, and convincing" reason to discount a claimant's testimony regarding disabling migraine symptoms on many occasions. *See Woods-White v. Comm'r of Soc. Sec. Admin.*, No. CV-24-01405-PHX-JAT, 2025 WL 325527, at *11 (D. Ariz. Jan. 29, 2025) (Botox reducing migraine headaches by at least 50-65% undermined the claimant's symptom testimony regarding the severity of her migraines even if they "did not fully control her migraines or pain"); *Sanchez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-0155-PHX-DLR (JFM), 2022 WL 4798452, at *7 (D. Ariz. Aug. 26, 2022) (a 50% reduction in daily migraines showed migraine symptoms were "well controlled"), *report and recommendation adopted*, 2022 WL 4783758 (D. Ariz. Sept. 30, 2022); *Martinez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00498-PHX-DLR, 2022 WL 4078219, at *3 (D. Ariz. Sept. 6, 2022) (30-40% improvement in migraines after Botox injections was a "clear and convincing" reason to discount the claimant's symptom testimony regarding his

migraines). For these reasons, the ALJ properly considered Fonseca's improvement from Botox injections as a reason for discounting her symptom testimony.

The ALJ also discounted Fonseca's migraine symptom testimony because it was "not entirely consistent with the medical evidence and other evidence in the record." (AR 26–27.) Fonseca argues an "ALJ may use inconsistent objective medical evidence in the record to discount subjective testimony, but 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony.'" (Doc. 12 at 5 (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (simplified)).) As in *Smartt*, that is not what the ALJ did here. *See Smartt*, 53 F.4th at 498 (ALJ who noted claimant's symptoms were "not *entirely* consistent with the medical evidence" simply meant the record contained conflicting evidence between claimant's testimony and the objective medical evidence). Indeed, two State agency medical consultants discounted the severity of Fonseca's migraines and assigned her similar exertional and environmental limitations as the ALJ did to account for them. (*See* Doc. 14 at 5 (citing AR 33, 85–88, 88–103).) The state agency consultants' findings too were based on Fonseca's "significant relief" from Botox injections that generally rendered her migraine symptoms "well controlled" and on other evidence in the record. (Doc. 14 at 5 (quoting AR 84, 102); *see also* AR 85–88, 88–103.) And as the Commissioner points out, "[e]ven '[w]here evidence is susceptible to more than one rational interpretation, it is the [ALJ's] conclusion that must be upheld.'" (Doc. 14 at 2 (quoting *Burch*, 400 F.3d at 679).)

Fonseca also argues the ALJ erred in considering her symptom testimony because she did not account for her "need to enter a dark space in order to reduce migraine symptoms" or present that limitation to the vocational expert. (Doc. 12 at 8.) But the ALJ properly discounted Fonseca's symptom testimony, so she was not required to assess all the limitations on Fonseca's work abilities that Fonseca claimed were necessary or to pose those limitations to the vocational expert. *See Shipman v. Comm'r of Soc. Sec.*, 271 F. Supp. 3d 899, 909 (E.D. Mich. 2017) (rejecting claimant's argument that the ALJ did "not

account for his full degree of limitation" because the ALJ "adequately explained his reasons for discounting [the claimant's] more extreme but unsupported allegations of limitation" and so "the ALJ was not required to include them in either the hypothetical question [to the vocational expert] or [in the] ultimate RFC"). The ALJ's purported failure to account for Fonseca's photophobia and need for a dark room is therefore not harmful legal error.

The ALJ properly evaluated Fonseca's migraine symptom testimony. She described it at length, referred to it repeatedly in her decision, and used it as one of the bases for finding Fonseca could only do work that required light exertion with some additional limitations. The ALJ specifically referenced Fonseca's improvement from Botox injections and the medical opinions of two State agency consultants as reasons for not imposing additional limitations. The ALJ thus provided "clear and convincing" reasons for discounting Fonseca's migraine symptom testimony that were sufficiently specific to conclude the ALJ "did not arbitrarily discredit" her testimony. *Revels*, 874 F.3d at 655 (quoting *Garrison*, 759 F.3d at 1014–15); *Tommasetti*, 533 F.3d at 1039. Thus, the ALJ's decision to discredit Fonseca's symptom testimony was supported by substantial evidence. *See Marsh*, 792 F.3d at 1173.

## IV. Conclusion

Fonseca's contention that the ALJ erred in discounting her migraine symptom testimony fails. She does not otherwise argue the ALJ's non-disability finding was not supported by substantial evidence or was otherwise based on harmful legal error, so the ALJ's decision is affirmed.

/
/
/
/
/
/

Accordingly,

**IT IS ORDERED** affirming the July 12, 2024, decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 4th day of November, 2025.

> Honorable Krissa M. Lanham
> United States District Judge